TOMIO B. NARITA (SBN 156576)
tnarita@snllp.com
R. TRAVIS CAMPBELL (SBN 271680)
tcampbell@snllp.com
JENNIFER L. YAZDI (SBN 301868)
jyazdi@snllp.com
SIMMONDS & NARITA LLP
44 Montgomery Street, Suite 3010
San Francisco, CA 94104-4816
Telephone: (415) 283-1000
Facsimile:   (415) 352-2625


Attorneys for Defendant
Gordon & Wong Law Group, P.C.
(erroneously sued as "Gordon and
Wong Law Group PC")

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDY SHEPARD-HALL,<br><br>Plaintiff,<br><br>vs.<br><br>GORDON AND WONG LAW GROUP PC; and DOES 1 to 10, inclusive,<br><br>Defendants. | CASE NO.: 2:16-cv-01361-MCE<br><br>**NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT BY DEFENDANT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:  April 20, 2017<br>Time:  2:00 p.m.<br>Ctrm:  7, 14th Floor<br><br>The Honorable Morrison C. England, Jr. |

TO PLAINTIFF AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on April 20, 2017, at 2:00 p.m. in Courtroom 7 on the 14th floor of the above Court, located at 501 I Street, Sacramento, California, 95814, the Honorable Morrison C. England, Jr. presiding, defendant Gordon & Wong Law Group, P.C. (erroneously sued as "Gordon and Wong Law Group PC") ("Gordon & Wong"), will and hereby does move this Court for an Order granting summary judgment in its favor, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

This motion is made on the grounds that claim in the Complaint fails as a matter of law.  Under *Guerrero v. RJM Acquisitions, LLC*, 499 F.3d 926 (9th Cir. 2007), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. does not apply to the settlement communications Gordon & Wong had with Plaintiff's counsel.  Nor did Gordon & Wong make any materially false or misleading statements during those communications.  As a result, there is no genuine issue of material fact for trial and Gordon & Wong is entitled to summary judgment.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support of the Motion and the declarations of Mitchell L. Wong and Wendy Swander, filed concurrently herewith, all of the other papers on file in this action, and such other and further evidence or argument as the Court may allow.

DATED: February 13, 2017            SIMMONDS & NARITA LLP
                                    TOMIO B. NARITA
                                    R. TRAVIS CAMPBELL
                                    JENNIFER L. YAZDI

                                    By:   s/R. Travis Campbell
                                          R. Travis Campbell
                                          Attorneys for Defendant
                                          Gordon & Wong Law Group, P.C.
                                          (erroneously sued as "Gordon and Wong
                                          Law Group PC"

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Before this suit was filed, the Price Law Group, APC ("PLG"), counsel for plaintiff Judy Shepard-Hall ("Hall"), engaged in settlement communications relating to a state court lawsuit with representatives of defendant Gordon & Wong Law Group, P.C. (erroneously sued as "Gordon and Wong Law Group PC") ("Gordon & Wong" or "the Firm").  After the state court suit was successfully settled, Hall and her attorneys filed this suit, alleging that statements made during those settlement discussions violated sections 1692e and 1692f of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA").  Her claim fails under controlling Ninth Circuit authority.

In *Guerrero v. RJM Acquisitions, LLC*, 499 F.3d 926 (9th Cir. 2007) ("*Guerrero*"), the Ninth Circuit held that communications with a debtor's attorney, like the ones at issue in this case, are not actionable under the FDCPA.  All of the communications challenged here by Hall occurred during telephone conversations between Gordon & Wong and Hall's counsel.  Under *Guerrero*, they cannot violate the FDCPA as a matter of law.

Even if these settlement discussions with counsel for Hall were actionable under the FDCPA, there would be no violation here.  The Firm never agreed it would release the garnishment on Hall's wages before the settlement payment was received.  Once the payment was received, the Firm promptly notified the local sheriff's office that the garnishment should be terminated.  Nor did the Firm agreed to send notice of the termination of the garnishment to Hall's employer, as she incorrectly alleges.  Any such notice would have been a nullity, as under California law, the sheriff's office is the only entity that could terminate the garnishment.

None of the statements made by Gordon & Wong to counsel for Plaintiff are actionable under the FDCPA, nor would they violate the Act even if they were subject to it.  Summary judgment should be entered in favor of Gordon & Wong.

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS

Gordon Wong was retained by non-party Asset Acceptance, LLC ("Asset") to enforce a state court judgment entered against Hall for the balance owed on her delinquent Dell Financial Services account ("the Account").  *See* Statement Of Undisputed Facts In Support Of Defendant's Motion For Summary Judgment ("SUF"), ¶ 1.  The Firm filed a writ of execution, which was subsequently served on Hall's employer by the Sacramento County Sheriff's Office.  *Id*. at ¶ 2.

On March 31, 2016, Gordon & Wong received a phone call from PLG (Hall's counsel).  *Id*. at ¶ 3.  The caller stated PLG had been retained to represent Hall and to negotiate a settlement of the Account.  *Id*.  On April 8, 2016, after several phone conversations between the two law firms, Defendant advised PLG that Asset would accept Hall's offer to settle the Account for one payment in the amount of $3,000.  *Id*. at ¶ 4.[1]

Gordon & Wong did **not** agree to directly notify Hall's employer that the garnishment should be terminated.  *Id*. at ¶ 5.  The Firm's procedure is to notify the sheriff's office of the termination of the garnishment after receiving the settlement payment from the debtor, as the sheriff is the only entity who can terminate a court ordered garnishment.  *Id*. at ¶ 6.[2]  Nor was there any agreement regarding the specific date when Gordon & Wong would provide the settlement documents to PLG.  *Id*. at ¶ 5.

Five business days later, on April 15, 2016, Gordon & Wong faxed a letter to PLG reflecting the settlement terms discussed during the settlement discussions ("April 15 Letter").  *Id*. at ¶ 7.  After the letter was sent, Gordon & Wong received a

---

[1]The recordings of the two phone conversations that occurred on April 8, 2016 have been lodged with the Court as Exhibits 3 and 4 to Mitchell Wong's declaration.  *Id*.

[2] *See* California Code of Civil Procedure ("C.C.P.") § 699.060(a)-(c).

call from PLG claiming that Hall's wages had been garnished that morning. *Id*. at ¶ 8. During the call, the PLG representative said she "thought" that Gordon & Wong would send the notice of termination of garnishment prior to April 15, 2016. *Id*. The Firm explained that no such agreement had been reached, and the termination request would be sent when the settlement payment was received. *Id*. The PLG representative requested that the text of the April 15 Letter be revised, to reduce the settlement payment by the amount that had been garnished. *Id*. Gordon & Wong agreed. *Id*.[3]

Two business days later, on April 19, 2016, Gordon & Wong faxed PLG the revised settlement letter, stating that Hall was to pay $2,165.91 by April 29, 2016, and the remainder of the settlement would be satisfied by the amount that had been garnished on April 15 ("April 19 Letter"). *Id*. at ¶ 9. That same day, although it was not required to do so, Gordon & Wong faxed a notice to the Sacramento County Sheriff's office, requesting that the garnishment be terminated effective April 19, 2016. *Id*. at ¶ 10. On April 20, 2016, Gordon & Wong received an executed copy of the April 15 Letter and payment of $3,000 from PLG, which was $834.09 more than the parties agreed Hall would pay. *Id*. at ¶ 11.[4]

On April 26, 2016, the Firm sent a second fax to the Sacramento County Sheriff's office requesting that the garnishment be terminated effective April 19, 2016. *Id*. at ¶ 12. The second fax was sent because the Sheriff's office claimed that the prior termination request it received from the Firm was unsigned. *Id*. The next day, the sheriff's office notified Hall's employer that the garnishment should be terminated. *Id*. at ¶ 13.

---

[3] A recording of the conversation that occurred on April 15, 2016 has been lodged with the Court as Exhibit 6 to Mitchell Wong's declaration. *Id*.

[4] As a result, Gordon & Wong did not retain any proceeds from the garnishment, which the Firm understands were returned to Hall. *Id*. at ¶ 16.

On May 5, 2016, Gordon & Wong received a letter from PLG claiming that Hall's wages had been garnished on April 29, 2016, and demanding the Firm pay $4,000 or she would sue for alleged violations of the FDCPA. *Id*. at ¶ 14.  On May 19, 2016, after conducting an investigation, attorney Mitchell Wong of Gordon & Wong sent a response, explaining the Firm had timely notified the Sheriff that the garnishment should be terminated, and that any additional amounts garnished were not the result of any error by the Firm. *Id*. at ¶ 15.  As a result of the overpayment by Hall on April 20, 2016, Gordon & Wong voided the check it received from the Sheriff in connection with the April 15, 2016 garnishment and instructed the Sacramento County's Sheriff office to return the funds to Hall. *Id*. at ¶ 16. The funds were returned, including any fees charged to Hall by the sheriff. *Id.*

Gordon & Wong never communicated directly with Hall after being contacted by PLG. *Id*. at ¶ 17.  The Firm negotiated in good faith with Hall's attorneys and provided timely notice to the Sheriff that the garnishment should be terminated, consistent with the settlement. *Id*.  The Firm had no control over whether or when the Sheriff notified Hall's employer of the termination request. *Id*.

On June 20, 2016, Hall filed this action.  Doc. No. 1.  She alleges that "during negotiations" with her counsel, Gordon & Wong agreed to send a "release garnishment" directly to her employer prior to April 15, 2016, but failed to do so. *See id.* at ¶ 21.  She also asserts that Gordon & Wong's one week "delay" in getting the settlement agreement to PLG is "not [her] responsibility." *Id*. at ¶ 22.  She further claims that after she made the $3,000 overpayment "PLG followed up with a phone call to [Gordon & Wong] to confirm receipt," but her wages were once again garnished on April 29, 2016. *Id*. at ¶¶ 22-25.

Based on these allegations, Hall contends that Gordon & Wong violated sections 1692e(2)(A), e(10) and f(1) of the FDCPA.[5]  *Id*. at ¶¶ 15-29.

## III.   **ARGUMENT**

### A.   **Legal Standard Governing Summary Judgment**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  As the movants, Defendants may discharge their burden by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *accord Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex*).

To survive this motion, Hall "must present competent evidence that creates a genuine issue of material fact."  *See Federal Election Comm'n v. Toledano*, 317 F.3d 939, 950 (9th Cir. 2002).  The materiality of a fact is determined by the underlying substantive law.  *See State of Calif., on Behalf of Calif. Dept. of Toxic Substances Control v. Campbell*, 138 F.3d 772, 782 (9th Cir. 1998).  "Summary judgment is appropriate when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law."  *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 950 (9th Cir. 2009).  "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'"

---

[5] Section 1692e(2)(A) prohibits a debt collector from falsely representing "the character, amount, or legal status of any debt."  15 U.S.C. § 1692e(2)(A).  Section 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  *Id*. § 1692e(10).  Section 1692f(1) prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  *Id*. § 1692f(1).

*Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (affirming summary judgment on FDCPA claims).

### B.      Communications Between Counsel Are Not Actionable Under The FDCPA

Hall's claim is barred as a matter of law, because it is premised entirely on the communications between Gordon & Wong and her attorneys. *See* Doc. No. 1 at ¶¶ 16-27.  Under *Guerrero*, communications with a debtor's attorney, like the ones challenged here, are not actionable under the FDCPA.  Summary judgment for Gordon & Wong is proper.

The Ninth Circuit's decision in *Guerrero* is directly on point.  Like Hall, the plaintiff in *Guerrero* alleged that settlement communications between the defendant and her attorney violated the FDCPA.  The Ninth Circuit rejected the argument and held that communications directed to a debtor's attorney are not actionable under the statute:

> when the debt collector ceases contact with the debtor, and instead communicates exclusively with an attorney hired to represent the debtor in the matter, the [FDCPA's] strictures no longer apply to those communications.

*Guerrero*, 499 F.3d at 939.  In doing so, the court noted that the FDCPA's purpose is to "protect vulnerable and unsophisticated debtors from abuse, harassment, and deceptive collection practices." *Id*. at 938.  But the Act's "purposes are not served by applying its stricture to communications sent only to a debtor's attorney, **particularly in the context of settlement negotiations**." *Id*. (emphasis added). "When an individual is represented by counsel who fields all communications relevant to the debt collection," the conduct the Act is concerned with "quickly evaporate[s]." *Id*. at 939.  As the court noted: "The Act was meant to shield debtors from abusive collection practices," but it was not "intended as a sword to be brandished by debtors who have retained counsel – the very debtors least in need of the Act's protections." *Id*. at 941.

As the *Guerrero* Court noted, applying the FDCPA to communications between counsel would frustrate one of the primary purposes of the Act, which is "to *encourage* the prompt and amicable settlement of debts."  *Id*. at 939 (emphasis in original).  Indeed, as the *Guerrero* court explained, applying the FDCPA settlement negotiations between counsel

> is a perverse result that Congress could never have intended and its only effect can be to make debt collectors in this circuit extremely reluctant to respond to *any* settlement negotiations or offers made by attorneys on behalf of their clients, or, for that matter, to extend unilaterally an offer of settlement to a debtor's attorney.

*Id*. at 940-41 (emphasis in original).

Here, Hall's entire claim is based entirely on settlement communications between Gordon & Wong and her attorney.  *See* Doc. No. 1 at ¶¶ 16-27.  The holding in *Guerrero* is directly on point and bars the claim as a matter of law.  As discussed below, Gordon & Wong did not make an false or misleading statements (*see*, *infra*, III.C), but even if it had, the statements are not actionable.  *See Guerrero*, 499 F.3d at 934-35.  The FDCPA was designed as a shield against abusive collection conduct; Hall cannot brandish it as a sword after she has retained counsel.  *Id*. at 941; s*ee also Morales v. Forster & Garbus, LLP*, 2012 WL 78630, \*3 (D. Ariz. Jan. 12, 2012) (following *Guerrero*; communications to debtor's attorney not actionable under the FDCPA).  Summary judgment should be entered in favor of Gordon & Wong.

**C.      Hall's Claim Fails Because The Settlement Communications Did Not Violate The FDCPA**

Gordon & Wong did not make any materially false or misleading statements in connection with negotiating the settlement.  The Firm never agreed to send a request to terminate the garnishment directly to Hall's employer, as she incorrectly contends.  Nor did Firm agree to provide a settlement agreement to counsel for Hall prior to April 15, 2016.  The Firm complied with the settlement terms by timely notifying the sheriff that the garnishment should be terminated, which the sheriff communicated to Hall's employer on April 27, 2016.  This occurred two days before the allegedly

improper garnishment.  The Firm cannot control, and did not agree to attempt to control, the speed at which the Sheriff or Hall's employer would act to terminate the garnishment.  Summary judgment in favor of Gordon & Wong is appropriate.

**1.   The Communications Would Not Have Mislead The "Least Sophisticated Debtor" Because The Firm Did Not Agree To Notify Hall's Employer Of The Garnishment Termination And Was Not Required To Send PLG The Settlement Agreement Prior To April 15, 2016**

Hall alleges that during the phone conversations with her counsel on April 8, 2016, PLG "informed [Gordon & Wong's representative] that a garnishment release letter needed to be sent to [her] employer to quash the garnishment" and that her attorneys provided her employer's fax number on April 11, 2016.  *See* Doc. No. 1, ¶¶ 17-18.  She alleges PLG's request constituted an agreement by the Firm that it would direct her employer to terminate the garnishment.  *Id*. at ¶ 21. She also alleges that the five business days Gordon & Wong took to get PLG the settlement letter was a "delay" that is "not [her] responsibility."  *Id*. at ¶¶ 21-22.  None of this is accurate, nor are any of the Firm's statements actionable.

The Court applies the "least sophisticated debtor" standard to determine whether a debt collector's communication complies with the FDCPA.  *See Guerrero*, 499 F.3d at 934.[6]  Under this objective standard, a communication violates the FDCPA only if the hypothetical least sophisticated debtor "would likely be misled by the [communication]."  *Swanson v. Southern Ore. Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1989) (per curiam).  Although objective, "the standard is lower than simply examining whether particular language would deceive or mislead a reasonable debtor."  *Id.* at 1227.  The Court employs this standard "to ensure that even the least sophisticated debtor is able to understand, make informed decisions

---

[6] Applying the "least sophisticated debtor" standard to communications with Hall's attorneys makes no sense and only further illustrates that the communications here are not actionable under the FDCPA.

about, and participate fully and meaningfully in the debt collection process." *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006).

Although forgiving, the "least sophisticated debtor" standard presumes a consumer will read collection communications "as a whole" and with some degree of care. *See Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1064 (9th Cir. 2011). Even the hypothetical "least sophisticated consumer" is presumed to have a "basic level of understanding and willingness to read with care." *See id.* at 1062; *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009) ("The unsophisticated consumer isn't a dimwit. She may be uninformed, naive, and trusting, but she has rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences.").[7]

When making this determination, a communication from a collector cannot be interpreted in isolation. It must be considered in context, which may include other communications with the debtor. *See Davis v. Hollins Law*, __ F.3d __, 2016 WL 4174747, *1 (9th Cir. Aug. 8, 2016) (failure to disclose collector was a debt collector in a voice message was not materially false or misleading given debtor's prior communications with the collector). Whether a communication would mislead the least sophisticated debtor under sections 1692e and 1692f of the FDCPA is a question of law. *See, e.g., Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir. 1997); *Gonzales*, 660 F.3d at 1062; *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010).

Gordon & Wong never agreed to notify Hall employer that the garnishment should be terminated. SUF at ¶¶ 4-5, 8. It is makes no difference that PLG requested

---

[7] The standard is necessary because "the FDCPA, while a consumer protection statute, can be abused just as easily by attorneys who use debtors to allege and test the most minute violations of a concededly intricate statutory scheme." *Gold v. Midland Credit Management, Inc.*, 82 F. Supp. 3d 1064, 1073, n. 5 (N.D. Cal. 2015) (citations and internal quotations omitted).

notice be given, or that it provided her employer's fax number. The Firm never agreed to act on those requests or deviate from its usual procedure of waiting for receipt of the settlement payment before notifying the sheriff that the garnishment should be terminated. *Id.* at ¶¶ 4-6, 8. Indeed, it would have made no sense to notify Hall's employer, because the sheriff was the only entity that could terminate the garnishment. *See* C.C.P. § 699.060(a)-(c). Gordon & Wong did not commit to getting PLG a settlement letter prior to April 15, 2016, nor did the Firm agree to request the garnishment be terminated prior to receiving payment. SUF at ¶¶ 4-5, 8.

The Firm negotiated in good faith with PLG in an effort to try and resolve the Account. The Firm did not agree, nor was it under any obligation, to take any action relating to the garnishment until it received payment from Hall. Neither the "least sophisticated debtor" – nor, in this case, Hall's attorneys – would have been confused or misled by the Firm's statements. There was no FDCPA violation here.

### 2. Gordon & Wong Timely Notified The Sheriff That The Garnishment Should Be Terminated

Hall's allegation that Gordon & Wong is responsible for her wages being garnished on April 29, 2016 is meritless. Doc. No. 1 at ¶¶ 22-25. Gordon & Wong requested the sheriff terminate the garnishment on April 19 and again on April 26, 2016. SUF at ¶¶ 10, 12. The sheriff notified Hall's employer on April 27, 2016 that the garnishment should be terminated. *Id.* at ¶ 13. Any purported garnishment that occurred days later cannot be attributed to Gordon & Wong.

## IV.   CONCLUSION

For each of the forgoing reasons, Gordon & Wong respectfully requests that the Court enter an Order granting summary judgment in its favor.

DATED: February 13, 2017          SIMMONDS & NARITA LLP


                                  By:   s/R. Travis Campbell
                                        R. Travis Campbell
                                        Attorneys for Defendant